The call today is agenda number three, number 130015, People of the State of Illinois v. Eugene Spencer. Counsel, are you prepared to proceed? May it please the Court, chairing you on behalf of the public. Eugene Spencer did not receive a fair sentencing hearing. The trial judge refused to consider his rehabilitative potential. As a result, Spencer was sentenced to 100 years in prison, a term that is 60 years greater than the threshold for a de facto life sentence, which potentially cannot be imposed upon an emerging adult under the Illinois Proportionate Families Clause. Counsel, is it appropriate to consider the sentence in aggregate for purposes of the analysis we have to do here? Yes, it is, because whether it's one sentence or several sentences that are combined together, the reality is that Spencer is serving 100 years in prison. So how the sentence is constructed, that doesn't affect whether the sentence is unconstitutional. But the de facto life sentence is 40 years in prison. It doesn't matter how that sentence is constructed. May I? I'm real confused about the issue. Okay, sure. Let's start here. You just said that the issue here was the nature of the sentencing hearing. Is that the extent to what we should be reviewing, is what was said and done at the sentencing hearing? Well, yes, that's part of it, certainly. The other part of it is the lower court's determination that Spencer's sentence was not a de facto life sentence by virtue of the fact that he would be eligible for parole under Illinois' youth parole statute after 20 years. So that's where I get real confused. Sure. You've got to help me. Okay. Are you saying that at the sentencing hearing, the trial court did not consider his individual demographics about his age? And is that where we start? I think that's a logical place to start, sure. But you want to go to the next step and talk about the constitutionality under the Illinois Constitution, I think, of the sentence he received. You also want to talk about that. Is that right? Right. There's a lot of moving pieces here. And then the next question is how do we look at the constitutionality of his sentence when we compare it to the cases involving juveniles and he is not a juvenile? That seems to be another issue. Right. So Spencer is 20 years old and he is not a juvenile. But under this court's case law or this court's decisions, the possibility that an emerging adult is entitled to similar protections as juveniles is still not foreclosed under the Illinois Proportionate Penalties Clause. So Spencer can raise this claim that his de facto life sentence can't be imposed on him due to his status as an emerging adult. See, that's where I really am confused. We understand the Proportional Penalties Clause and we understand how this court has talked about it. In other words, we're not talking about the Eighth Amendment of the United States Constitution. We're not talking about Miller, Graham, Roper, Montgomery, and Jones. We're not talking about Buffer. We're talking about someone who is not a juvenile and determining whether or not that the sentence that was imposed is such that it shocks our moral conscience and all the other language that we've used about how we determine proportional penalties. Isn't that right? All right. So the Miller line of cases, they apply to juveniles directly, but the principles announced in those cases do apply here for emerging adults as well through the Illinois Proportionate Penalties Clause, which of course provides greater protections than the Eighth Amendment. So under that logic, if we have a floor set by the Eighth Amendment, Illinois' floor is higher. And that's how we expand these protections to emerging adults, such as Spencer. And you're making an as-applied challenge, correct? Yeah, that's correct. Okay. So what is specifically about Mr. Spencer, as-applied, versus this larger discussion that we should be importing all of the Miller ideas into the proportional penalties violation under the Illinois Constitution? What's specifically about Mr. Spencer as-applied? Well, his sentence is a 100-year life sentence. Now, the lower court stated that it was not actually a de facto life sentence due to the possibility of parole after 20 years under Illinois' youth parole statute. But the problem here is if we consider emerging adults having similar protections as juveniles, then what Graham says is that they should be... That's my first problem. That's a big jump. In order to engage your argument, do we have to apply all of the Miller, Graham, Montgomery, and Jones ideas and graft that onto emerging adults? Is that the threshold decision we have to make in your case? Those principles would apply if you're going to expand the protections that are normally reserved for those under 18. If those are expanded under an Illinois proportional penalties clause to those who are 19, to those who are 20, then what was stated in Graham, what was stated in Miller, those things provide floor that would also apply to emerging adults under the Illinois proportional penalties clause. Has the court ever said that? Well, this court hasn't announced that as of yet, but this court has a proposal. You're asking in this case for us to announce it. That's really what I'm trying to get to. Oh, yeah. The court has not defined what a proportional penalties claim would look like for an emerging adult. You're asking to use this case as the case in which we make that statement. Is that right? Sure. This court is inclined to do that. That definitely should be something that would be the logical next step under the Illinois proportional penalties clause. But there's also the question of whether parole provides a meaningful opportunity for release, which is the language from Graham. And qualifying that language is also that a meaningful opportunity for release must be based on demonstrated rehabilitation and demonstrated maturity. Counsel, let me ask you this. So was this proportional penalties claim raised for the first time in the appellate court? It was. And has there been a hearing on this claim? I mean, we're talking about this as an as-applied challenge. Has there been a hearing that would flesh out how this specifically relates to your client and how it applies to him? Right. So there was a sentencing hearing where – No, no. I'm talking about a hearing on your proportionate penalties claim. Well, this is direct appeal, so the only opportunity for that hearing to occur was at sentencing. Trial counsel did raise this issue at sentencing. He argued that – What about in a post-conviction context? Well, we're not in post-conviction land yet. We're still on direct appeal. So Spencer hasn't filed a post-conviction petition. This is still on direct appeal, technically. But these issues were raised at sentencing. Trial counsel – The proportionate penalties claim was raised at sentencing? Sure, it was, yes. Because at the sentencing hearing, this court had – I think at that time, this court had still left open the possibility that someone like Spencer, at the age of 20, was still entitled to protections afforded to juveniles. And as of today, as your honors have mentioned, that question hasn't been foreclosed yet. So this issue was addressed at sentencing. But I'd like to add that the trial judge did not actually consider Spencer's youth or his – or the intended circumstances, particularly his rehabilitative potential. So that's where the constitutional error comes from. And when Spencer raised this issue on direct appeal, the appellate court sort of booted the issue without addressing the merits, saying that because he has this possibility of parole after 20 years, he's not actually serving a life sentence, so there's no constitutional violation. So that's one half of this argument. And the other half, if you will, is whether he received a fair sentencing hearing. So what was the trial court's finding as to defendant's proportionate penalties claim that was raised at his sentencing hearing? Well, the trial judge said that because there was no official announcement that emerging adults are entitled to these protections, he wouldn't be considering them as applied to Spencer. He also made other comments that Spencer was a grown man and that Spencer – that there was no reason for Spencer to ever be back on the streets again. So clearly, the trial judge in this case was not considering youth rehabilitative potential, those things that we have to consider when we're considering – when for at least a juvenile and potentially an emerging adult. So – well, but you're saying in this case, in order to decide this case, we have to say that the whole ideas about – that underpin the Eighth Amendment federal cases, we have to apply them in our terms of the proportional penalty clause for emerging adults. We have to decide that in this case to get to the issues you want us to get to. Is that right? Well, Your Honor, you can also just hold that parole doesn't provide a meaningful opportunity for release without addressing the merits of Spencer's proportional penalties claims, but – Then what meaning does that have? It's kind of an advisory opinion, right? Well, I mean, the appellate court refused to address whether Spencer's sentence was unconstitutional as an emerging adult because he has this possibility of parole. So that's – I suppose that's the first question, Your Honors, to address, whether the possibility of parole negates a de facto life sentence, whether it converts a de facto life sentence into a non-life sentence. Or makes his sentence constitutional. Right. Well – You're somehow suggesting it's unconstitutional. The sentence that he received was unconstitutional because it was a life sentence. Right. Right? That's your argument. Right. How is it unconstitutional? Well, it's unconstitutional because he's an emerging adult. That question, again, is still up in the air as to whether these constitutional protections apply to 20-year-olds and 19-year-olds like Spencer. But, again, one of the rulings from the lower court is that this possibility of parole, whether those protections apply or not, this possibility of parole would make it so that his sentence is constitutional because he is eligible for parole after 20 years. And that's incorrect. That interpretation of the law is incorrect because, as Grant states, a meaningful opportunity for release has to be based on demonstrated rehabilitation and maturity. And Illinois' youth parole statute requires that every person, regardless of demonstrated rehabilitation, regardless of his ability to rejoin society, must stay in prison for 20 years. And we know that the brain finishes maturing at around the age of 25. So it's certainly possible and likely that someone who commits his crime at the age of 20 can experience remarkable change within 10 years, within 15 years. But any development that occurs during that time doesn't mean anything under Illinois' youth parole statute because it requires that person to stay in prison for 20 years. It wasn't the statute. I mean, it was drafted and implemented as a direct result of Miller. And aren't we supposed to consider the statute? I mean, there's a presumption that they are constitutional and that the Illinois General Assembly, when they implemented the statute, considered that they were going to be given an opportunity for parole after 20 years, in effect to satisfy the language of Miller about those youthful offenders and having an opportunity for them to return. So what is your explanation of why we should find this statute unconstitutional as applied to your client? Right. So the legislature considered Miller in passing the statute, but that doesn't mean the legislature did it correctly. That language from Graham, meaningful opportunity for release, is qualified by the phrase demonstrated maturity and demonstrated rehabilitation. So any parole system has to be based on that. Any parole system that keeps someone in prison despite demonstrated rehabilitation is potentially unconstitutional. They should be, juveniles and young adults should be given the opportunity to demonstrate that and not have a set strict time limit as to how long they must remain in prison, especially now that we know that the brain does finish maturing at 25 years. But that's not the only problem with Illinois' Youth Parole Statute. Once that time comes when someone is eligible for parole under Illinois' Youth Parole Statute, the parole board is instructed to consider the seriousness of the offense and also required to consider factors related to youth as aggravating factors, such as emotional instability, drug use, gang affiliation. It's also required to consider the length of the sentence. So when someone comes before the parole board, they're already at a disadvantage. And in 2022, the parole board only granted 14% of parole applications for adults. So if those stats apply to juveniles, that's not a meaningful thing. He's not a juvenile. He's not a juvenile. We've got to talk about this Mr. Spencer. How is he affected by this statute? The Youth Parole Statute applies not just to juveniles, Your Honor. It also applies to 19-year-olds and 20-year-olds. So it applies to him, and that's why we're here today. So he, again, the things that the parole board has to consider put people like Spencer at a disadvantage when they apply for parole. And the chances of release are very low. That can't be considered a meaningful opportunity for release. That's just a remote possibility for release. The whole point is that doesn't convert a de facto life sentence into a non-life sentence, this mere possibility of parole. And to make matters worse, in Illinois, once you apply for parole, it's not as if you can apply again the next year. In Illinois, you have to wait 10 years for your second chance to apply for parole. And after that second chance, that's it. For instance, if the parole board denies release on some arbitrary reason, you're out of luck. You have to serve the entirety of your sentence. Now, other states allow for those who become eligible for parole to apply pretty much every year. The only other state that puts a cap is South Dakota, and they cap it at three times five years apart. So Illinois really has a sort of draconian parole system in terms of how many times you can apply and what factors the parole board has to consider. And another important point is that in Illinois, the adult parolees are allowed to apply every year once they become eligible. We don't grant that same generosity to youth. So this parole statute, it doesn't have the characteristics of something that provides a meaningful opportunity for release. It only provides the chance, the remote possibility of release. And that's not enough under the language from the Miller line of cases, the language from the Illinois Proportionate Penalties Clause that requires all penalties to have the objective of restoring an individual back to useful citizenship. Counsel, where your client raised this for the first time in the appellate court, how is it different than the Harris case where we declined to hear that because it was an insufficient record? There had not been a hearing on the claim. Right. So admittedly, that's similar in the Harris case where he raised it on direct appeal, but he didn't have, or I think the issue there was there was no individual brain science in regards to him. But this court didn't foreclose Harris's claim. He was still allowed to raise that claim in a later petition. In Spencer's case, certainly that's an option, but that would be a waste of, or it would be an inefficient result. We know here that Spencer raised his claim on direct appeal in the trial court. If this were remanded for resentencing, he would have a better opportunity to get personalized brain science in terms of arguing his claim that he was more like a juvenile than an adult. And if we also just look at the record, there are things here indicating Spencer's immaturity, his ability or his failure to develop into an adult. He had an incredibly harsh childhood, homeless for much of his teenage years. He's an orphan. He has no parents. This is someone who really didn't have any sort of chance to succeed. I'm not saying that's an excuse for what he did, but certainly it played a factor in how these events unfolded. So counsel, I just want to make sure I'm clear. So is it your position that the sentencing hearing was an evidentiary hearing and that findings of fact as to this proportionate penalties claim were made following that hearing? No, not findings of fact. The trial judge refused to consider those circumstances. Well, earlier I asked you was there a hearing, and you said, well, there was a sentencing hearing. So I'm just trying to be clear on what your position is. Well, yeah, there was a sentencing hearing that was inadequate because those factors weren't considered. The trial counsel raised the issues related to youth under the Illinois proportionate penalties clause, but the trial judge refused to consider that. So it's your position that there was not an evidentiary hearing and not any findings of fact as to the proportionate penalties claim. Is that your position? Well, the trial judge said it didn't apply. I guess that could be a finding of fact. But, yes, no findings of fact in regards to whether youth played a role or whether rehabilitative potential existed. So in that respect, yes. Your red light's on, but may I ask a follow-up question? Sure. So there was testimony at the hearing in mitigation about his background, about his here there was a co-defendant who was using Mr. Spencer as a puppet, his background, his life, upbringing in the Robert Taylor homes. His father was mostly missing, experienced homelessness. He's an orphan. He struggled in school. He had an intellectual disability that hampered his academic progress. And you're saying the court specifically said, I will not consider any of that?  He said the word said, I won't consider any of that? The court said he would consider the court paid lip service to the PSI saying, I'd consider it. But then he also said that Spencer was a grown man. He also said that nobody forced Spencer to do this. He disregarded something, the peer pressure, which is one of the hallmarks of youthful indiscretion that are discussed in the Miller cases. So the court did not consider. He didn't say, I refuse to. You said refuse. Use that word twice. He didn't refuse to consider all the issues that were raised in mitigation. But rather, he talked beyond that into the facts of this case. Is that right? No. He refused to. He said that Spencer was a grown man. He said that Spencer, there was no reason for Spencer to go back on the street. That, to me, seems that the court is saying that there is no rehabilitation possible here. So that seems to mean that he refused to consider youth in his intended circumstances, specifically rehabilitation, which is the problem here. Again, that's the language from Graham. Demonstrate maturity and rehabilitation. Spencer has to be given a chance to show that, regardless of the brutality of this crime. Thank you very much. You're welcome. Thank you, Your Honors. Counselor Fabley. May it please the Court. I am Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. I would like to start by just stepping back and trying to understand what is happening in this case. There are two different theories before the Court. It is ultimately a proportionate penalties clause claim, but it is founded in two different theories. The first theory is one grounded in Miller. It is a theory that the defendant inheres pressed, and the theory is that Miller applies to young adult offenders under the Illinois Constitution. And that theory is premised on importing Miller entirely into the proportionate penalties clause. Miller, as the Court is aware, is a case involving juvenile offenders and only governs juvenile offenders. Defendant here was a young adult. So first he would have to surpass the hurdle of demonstrating that he is no different than a juvenile offender. And on that point, the Court has stated in its precedent that there must be an evidentiary hearing where the defendant provides scientific evidence demonstrating that he is no different than a young adult. That certainly did not happen here, as the Court has observed. And just to touch on that, Justice Holder-White, defendant did raise this claim in the trial court, and he did have the opportunity to present such evidence. And the trial court expressly said, if you want to present evidence, you can present evidence on this. But the trial court decided under the proportionate penalties clause that this defendant's sentence of de facto life with the possibility of parole was proportionate to his offenses. The Court found that 100 years was proportionate to his serious offenses. So the Court did not refuse to consider youth. The Court actually cited and quoted the Illinois Constitution. The Court said specifically, I find your youth mitigating. The Court read the PSI two or three times. The Court specifically considered all of these factors. But the problem is, is that defendant's argument rests on the notion that the proportionate penalties clause required that the trial court give greater weight to his rehabilitative potential than the seriousness of his offenses. And this Court has repeated over and over that under that traditional proportionate penalties analysis, that is not required. So in the end, the trial court weighed everything, and his sentences are proportionate to his serious offenses under this traditional analysis. Now, going back to that first theory that defendant is actually presenting, it's the only theory that he raised in the appellate court. That theory is the Harris-based theory. He hasn't shown he's a juvenile, so that is one way the Court could dispose of this. The other way the Court could dispose of this is, as Justice Tice pointed out, Miller is not a proportionate penalties clause case. And so the Court could just say Miller doesn't apply. But we've set that aside in our briefing, and we'll set it aside here. And the easiest way to dispose of this case is the way the appellate court did, which is to say let's assume you're like a juvenile. Let's assume that Miller applies wholesale and proportionate penalties clause. The claim fails because the defendant did not receive the punishment that Miller prohibits, which is mandatory life without the possibility of parole. I went back and counted. In Miller, the Court used the term life without the possibility of parole or life imprisonment without the possibility of parole about 68 times. The Court was only banning life without the possibility of parole when it is imposed mandatorily on juvenile offenders. Let's assume defendant's a juvenile. Defendant simply did not receive that. Justice O'Brien, as you've noted, the General Assembly knew about Miller. It knew about Montgomery. It knew about Graham. It read that. It considered the brain science. It looked at everything. And the General Assembly responded by enacting this youthful offender parole scheme. And this youthful offender parole scheme gives a juvenile a chance to get out of prison after 20 years. It gives defendant a chance to get out of prison after 20 years. Defendant's arguments sort of rest on his proposition that he must be guaranteed release as soon as he's mature. But that runs directly contrary to what Graham specifically said, which is that a state need not guarantee that a juvenile is released from prison. And so at the end, the General Assembly didn't need to enact a scheme under the Constitution that would guarantee the defendant's release. All the General Assembly needed to do was provide that chance. And we know the General Assembly thought about it, and it thought carefully. We know from Cavazos, where the Second District explored this, that the legislative history demonstrates that all the stakeholders were involved in this. This was a deliberate decision made after Miller. So no different than in Buffer, we presume that it was constitutional. And defendant has offered nothing to demonstrate that it wasn't. Counsel, while Mr. Spencer may be entitled to parole, how does Section O of that statute figure in, where it says nothing in this section shall be construed as a limit, substitution, or bar on a person's right to sentencing relief? Sure. So I think this case might be an example where I could use, should the court find, under traditional proportionate penalties analysis, that the hundred-year term that the trial court imposed for the three offenses is so wholly disproportionate as to shock the moral sense of the community, then the court would reduce that sentence to whatever was proportionate. So the fact that there is a parole opportunity doesn't change that that ultimate sentence that the trial court imposed, the time he might have to serve if he doesn't get parole, still needs to be proportionate to his offenses. I'll just step back for a second out of that traditional analysis. I think Justice Rushford talked about how, whether we look at the individual sentences or the aggregate. The court's precedent is clear on this. The court has, since the early 1900s, said the proportionality analysis looks at the individual offenses. We think the court should confirm that. It's applied that rule since then. But ultimately, in this case, it doesn't matter which way you look at it. We think that the de facto life sentence is proportionate to the seriousness of his offenses, and the trial court accounted for his youth. His minimum sentence was also de facto life. The legislature accounted for his youth specifically by giving him an opportunity for parole. So, Justice Seville, in the end, the parole opportunity doesn't make it so that the constitutionality of the sentence can't be considered. And, of course, it must be considered if the challenge is raised. And here, we just think the sentence is constitutional. Counsel, you indicated that the trial court gave defense counsel an opportunity to present certain evidence as it related to, I guess, what we'll call a Harris-like claim. And so, are you conceding there was a hearing on that? Our position is that the defendant had the opportunity. He presented this claim. He cited to Harris. He cited to House. He cited to the precedent that existed. And defense counsel certainly could have presented that evidence. And the trial court said, look, if you want to present evidence, present it. And nothing precluded counsel from doing that. This all occurs after Harris, right? So defense counsel could have gotten an expert, presented the evidence to support his claim. But did not. But did not. And so that dooms it because there really is just no evidence in the record to support the finding that he is like a juvenile. Now, to the extent that we haven't really pressed that argument, because at the end of the day, the appellate court's holding is clear, which is he did not get the sentence that Miller prohibits. And so that's the easiest and simplest way to dispose of it. But that is just another ground on which the court could rule. If the court were to find, you know, that his sentence of life with the possibility of parole is the same as life without the possibility of parole, such that he might be able to succeed on this Miller-based proportionate penalties theory, we think that's still a basis to reject the claim. The alternative, the court could send this to post-conviction and let him develop it. But you are still troubled. But you are arguing that perhaps one kind of argument is to just assume that the federal milligram rubber, et cetera, ideas of the Eighth Amendment should be imported into our proportional penalties analysis for emerging adults. We should just assume that and then move from there? I think that's the easiest way to dispose of this claim. But our position is that you cannot import Miller into the proportionate penalties clause. And the reason is that the proportionate penalties clause has always been considered as different than the Eighth Amendment. The language is expressly different. The court has construed them differently. The proportionate penalties clause includes an identical elements test. The Eighth Amendment doesn't. The proportionate penalties clause is always applied to the substance of the sentence received. At the end result, was the sentence that the defendant received proportionate to the offenses? The court's never announced procedural components or categorical rules. It's always looked at individual cases and decided mandatory minimums are fine. The General Assembly has the authority to do that. We defer very heavily to the General Assembly. And so in the end, we just don't think Miller, which is a categorical prohibition, is something that is even contemplated by the doctrinal underpinnings of the proportionate penalties clause as the court interpreted it back in the 1970s and late 1960s. So at the end of the day, I don't think there is any doctrinal way to import this into the But just as the court has disposed of other cases where these issues have arised, they've sort of, you've sort of picked one, right? So in some cases, you've said that the defendant had developed the age-based component, the evidence to show they're like a juvenile. In other cases, they've said, well, the sentence was 40 years and so your claim would fail because it's not life without parole. Similarly here, you can do the same thing should the court want and say that this is not a mandatory life without parole sentence. So whatever this theory is, defendant cannot get relief on that. And I'd like to just, on the traditional proportionate penalties theory, I think we've discussed, we think the trial court's decision was not an abuse of discretion. And so the court should affirm on that basis as well. If the court has no further questions, I'd ask the court to affirm the trial appellate court's judgment. Thank you very much. And then reply. Thank you, Your Honor. Just real briefly. First, the Illinois proportionate penalties clause, the state argued that it's different from the Eighth Amendment. And the state pretty much argued that it's a static document. But the Illinois proportionate penalties clause, this court has held that it reflects the evolving norms of our society. And certainly the Miller line of cases also reflect the evolving norms of our society. So the fact that the Supreme Court has made these rulings in regards to juveniles, those certainly apply under the Illinois proportionate penalties clause. So it would be our position, and I think just the logical position, that the Miller line of cases, what was said in Miller, would apply under the Illinois proportionate penalties clause. Like I said during my argument, the Eighth Amendment provides a floor. The Illinois proportionate penalties clause, which provides greater protections than the Eighth Amendment, provides a higher floor. So by that logic, what was held by the U.S. Supreme Court would certainly apply in Illinois. Second, in regards to the sentencing hearing, yes, the trial court did mention the Illinois proportionate penalties clause. He did mention the PSI. But his language is more telling as to what he really thought about this. He said that Spencer is a grown man. He said that Spencer, he can't give you one good reason why Spencer should be on the street again. He was not considering rehabilitation. He considered one of the factors, peer pressure. He just disregarded it. He said that no one forced Spencer to do this. Well, Spencer was in a desperate situation when Wilson told him that he would pay him to do this horrible crime. Again, not an excuse for what Spencer did. But peer pressure is a factor that is one of the hallmarks of youth that we have to consider. So I think the court's own words tell us that youth and its intended circumstances were not considered in this case. If your audience will have any other questions, we would ask for the relief requested in the briefs. Thank you. Thank you very much, counsel. This case, which is number, agenda number three, number 130-015, People of the State of Illinois v. Eugene Spencer, will be taken under advisement. Thank you both for your arguments. And Mr. Marshall, the Supreme Court will stand in recess until Wednesday, March 12th at 9 a.m.